**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| QUINCEY HALL,<br><br>        Plaintiff,<br><br>   v.<br><br>BITCOIN DEPOT, INC.,<br><br>      Defendant. | Case Number:<br>1:25-cv-04317-WMR |

**BITCOIN DEPOT OPERATING, LLC'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

I.     INTRODUCTION .........................................................................................1

II.    RELEVANT ALLEGATIONS IN COMPLAINT.......................................4

III.   LEGAL STANDARDS FOR DISMISSAL ..................................................6
       A.     Dismissal Under Rule 12(b)(1) ..........................................................6
       B.     Dismissal Under Rule 12(b)(6) ..........................................................7

IV.    ARGUMENT.................................................................................................8
       A.     Plaintiff Lacks the Requisite Article III Standing to Pursue His
              Claims Against Bitcoin Depot..............................................................8
       B.     Plaintiff's Claims Fail as a Matter of Law ........................................12
              1.     Plaintiff's negligence claim fails as a matter of law...............12
              2.     Plaintiff's negligence per se claim also fails ..........................16
              3.     Plaintiff cannot state a claim for invasion of privacy
                     because there is no evidence of an intrusion by Bitcoin
                     Depot .......................................................................................17
              4.     Plaintiff cannot establish the necessary meeting of the
                     minds to maintain a claim for breach of an implied
                     contract....................................................................................18
              5.     Plaintiff's unjust enrichment claim fails because he did
                     not confer a benefit on Bitcoin Depot......................................20
              6.     Plaintiff cannot establish a fiduciary relationship between
                     himself and Bitcoin Depot .......................................................21
              7.     Plaintiff has failed to establish an entitlement to
                     injunctive relief under the UDTPA..........................................23
              8.     Plaintiff has failed to adequately allege facts sufficient to
                     state a claim under O.C.G.A. § 13-6-11 ..................................25

V.     CONCLUSION.............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)................................................................7

*Bland v. Urology of Greater Atlanta, LLC*,
    No. 1:23-cv-132, 2024 U.S. Dist. LEXIS 118794 (N.D. Ga. Mar.
    14, 2024) ................................................................9

*Bracy v. Americold Logistics LLC*,
    No. 1:23-CV-5743-TWT, 2025 U.S. Dist. Lexis 28981 (N.D. Ga.
    Feb. 19, 2025) ................................................ 16, 18, 19, 20, 21, 24

*Bradley Center v. Wessner*,
    250 Ga. 199 (1982) ................................................................13

*Central Anesthesia Assoc. v. Worthy*,
    254 Ga. 728 (1985) ................................................................16

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)................................................................7

*Clayton v. PruittHealth, Inc.*,
    No. 1:24-CV-2960, 2025 U.S. Dist. LEXIS 108543 (N.D. Ga. June
    9, 2025) ................................................................21, 22

*Collins v. Athens Orthopedic Clinic*,
    356 Ga. App. 776 (2020) ................................................................15, 24

*Dep't of Labor v. McConnell*,
    305 Ga. 812 (2019) ................................................................13, 17, 23

*In re Equifax, Inc., Consumer Data Sec. Breach Litig.*,
    362 F. Supp. 3d 1295 (N.D. Ga. 2019)................................................................19

*Everhart v. Colonial Pipeline Co.*,
    No. 1:21-CV-3559-MHC, 2022 U.S. Dist. LEXIS 155295 (N.D.
    Ga. July 22, 2022)................................................................15

*Focus Entm't Int'l v. Wachovia Bank N.A.*,
No. 1:04-CV-2649, 2005 U.S. Dist. LEXIS 57722 (Nov. 18, 2005) .................23

*Gibson v. Equifax Info. Servs.*,
No. 5:18-cv-00465, 2020 U.S. Dist. LEXIS 269752 (M.D. Ga. Jan.
14, 2020) .....................................................................................................5

*Glover v. Lockheed Martin Aero*,
No. 1:19-CV-0198, 2019 U.S. Dist. LEXIS 249536 (N.D. Ga.
Sept. 17, 2019) .............................................................................................7

*Green-Cooper v. Brinker Int'l*,
73 F.4th 883 (11th Cir. 2023) ......................................................................9

*Griffin Indus., Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007) ..................................................................10

*Gutierrez v. Wells Fargo Bank*,
889 F. 3d 1230 (11th Cir. 2018) ...................................................................3

*Hill v. White*,
321 F.3d 1334 (11th Cir. 2003) (per curiam) ...............................................7

*Murphy v. Bajjani*,
282 Ga. 197 (2007) .....................................................................................16

*Provost v. Aptos, Inc.*,
No. 1:17-CV-02120-ELR, 2018 WL 1465766 (N.D. Ga. Mar. 12,
2018) .........................................................................................................12

*Purvis v. Aveanna Healthcare*,
563 F. Supp. 3d 1360 (N.D. Ga. 2021)............................... 13, 14, 17, 18, 19, 22

*Ramirez v. Paradies Shops, LLC*
69 F.4th 1213 (11th Cir. 2023) ...................................................................14

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
993 F.2d 800 (11th Cir. 1993) ......................................................................6

*Saunders v. Duke*,
766 F.3d 1262 (11th Cir. 2014) ..................................................................10

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ....................................................................6, 7

*Teague v. AGC Am., Inc.*,
   No. 1:24-cv-00823, 2025 U.S. Dist. LEXIS 102564 (N.D. Ga. Jan.
   6, 2025) ..........................................................................................9, 15

*In re TRC Staffing Servs.*,
   No. 1:24-cv-02398, 2025 U.S. Dist. LEXIS 127638 (N.D. Ga. June
   18, 2025) .............................................................................................19

*Tsao v. Captiva MVP Rest. Partners, LLC*,
   986 F.3d 1332 (11th Cir. 2021) .......................................6, 7, 8, 9, 12

## Statutes

FTC Act Section 5 ...................................................................................25

O.C.G.A. § 10-1-373(a) ..........................................................................23

O.C.G.A. § 13-6-11 ..............................................................................3, 25

# I. INTRODUCTION

Courts and companies are now faced with a troubling trend when dealing with cybercriminals, data breaches, and complaints that are filed regardless of the facts or circumstances. The unfortunate reality of modern life is cybercriminals exist, and they victimize governments and companies nationwide. Not every data breach should result in a complaint being filed, but the pattern suggests plaintiffs believe the contrary. Complaints are being filed in a rush without proper investigation, essentially assuming a strict liability standard. Plaintiffs assume if a breach happened, then a company must be put through the cost and burden of responding to a complaint and being potentially subject to improper exploratory discovery. More troubling is these cases are being filed even when there is no evidence of harm, let alone concrete harm, and plaintiffs are in no way tracing their vague allegations of harm to the breach. This is such a case, and it should be dismissed.

Over fifteen months ago, in June 2024, Bitcoin Depot Operating, LLC d/b/a/ Bitcoin Depot[1] ("Bitcoin Depot") was the victim of a sophisticated data security attack (the "Incident"). In response to detecting suspicious activity, Bitcoin Depot launched an investigation, engaged third-party incident response experts, and notified federal law enforcement. It was clear from the beginning that Bitcoin Depot

---

[1] Bitcoin Depot, Inc. does not own or operate any kiosks and had no interaction with consumers (including Plaintiff). Bitcoin Depot Operating, LLC is the correct party.

customers were not the target of the criminal hacker. For over a year, law enforcement investigated the Incident to identify the responsible criminals. And, during this time, they requested Bitcoin Depot not publicly reveal any information about the Incident. In July 2025, law enforcement authorized Bitcoin Depot to send notifications if required by state breach notification statutes, which it did.

Thus, this case is unique. At the time of the filing of the Complaint, the Incident was over thirteen months old. Despite this passage of time, Plaintiff does not allege a single occurrence of actual harm arising from the Incident. Plaintiff does not allege he was a victim of fraud or identity theft. Nor does he allege that any of his data involved in the Incident has been found on the dark web.

Plaintiff knows this absence of causation and harm is fatal. Instead of not filing a meritless complaint, Plaintiff relies on allegations that precedent has repeatedly found are insufficient. Plaintiff alleges he is "subject to the present and continuing risk of fraud, identity theft, misuse, and physical harm." Compl. at ¶ 130. But that allegation rings hollow as he has not made a single allegation that this purported risk materialized in the thirteen months between the Incident and his filing of the Complaint.

Plaintiff also received a notice that identified his personal information potentially impacted by the Incident. There is no reference to a Social Security number in the notice nor does Plaintiff plead he ever provided his Social Security

number to Bitcoin Depot. Regardless, Plaintiff reflexively filed this lawsuit within a month of receiving notice, and included numerous baseless allegations premised upon the nonexistent exposure of Social Security numbers. Plaintiff's claims fail.

To begin, Plaintiff lacks the requisite Article III standing to maintain his claims; despite the passage of over a year, he failed to allege facts establishing a plausible injury in fact. Plaintiff's negligence and negligence *per se* claims fail because he has alleged neither a common law duty of care owed to him by Bitcoin Depot nor damages caused by a purported breach of duty. His invasion of privacy claim fails because he lacks any allegations of an intentional intrusion by Bitcoin Depot as opposed to a third-party cybercriminal. His implied contract claim fails because he cannot show a meeting of the minds as to an agreement to safeguard his personal information. Plaintiff has alleged no facts establishing a benefit he conferred on Bitcoin Depot to maintain an unjust enrichment claim, nor has he alleged any facts establishing a fiduciary duty owed to him by Bitcoin Depot. Plaintiff similarly has failed to allege any facts demonstrating an entitlement to injunctive relief under the Georgia UDTPA or relief under O.C.G.A. § 13-6-11.

At bottom, Plaintiff has fallen woefully short of meeting his pleading burden. His Complaint against Bitcoin Depot should be dismissed in its entirety.[2]

---

[2] Bitcoin Depot files this Motion to Dismiss without waiver of and reserving its right to bring a Motion to Compel Arbitration with respect to the claims of the Plaintiff and the unnamed putative class members. *See Gutierrez v. Wells Fargo Bank*, 889

## II.    RELEVANT ALLEGATIONS IN COMPLAINT

Bitcoin Depot operates virtual currency kiosks (sometimes referred to as Bitcoin ATMs), which allow users to buy and sell Bitcoin and other cryptocurrencies using cash, and BDCheckout™ locations, which allow users to fund their Bitcoin wallet at participating retailer checkouts.  Compl. at ¶ 2.  These self-service kiosks convert cash into Bitcoin.  *Id.* at ¶ 22.  "The machines resemble traditional ATMs with a touchscreen display, keypad, bill acceptor slot for cash insertion, and camera to scan QR codes liked [*sic*] to users' Bitcoin wallets where funds are transferred."  *Id.* at ¶ 22.  Bitcoin Depot collects personal information from all users as part of its standard account registration and account opening process.  *Id.* at ¶¶ 23-24.

On June 23, 2024, Bitcoin Depot detected suspicious activity on its network.  *Id.* at ¶ 6.  Bitcoin Depot initiated an internal investigation with the support of third-party incident response specialists and notified federal law enforcement.  *Id.*  Bitcoin Depot completed its investigation on July 18, 2024, through which it confirmed an unauthorized intrusion into its systems.  *Id.*  One year later, Bitcoin Depot was advised by federal law enforcement that it was authorized to disclose the Incident, and began notifying its users on or about July 9, 2025.  *Id.* at ¶¶ 6, 9.

---

F. 3d 1230, 1237-39 (11th Cir. 2018) (holding prior to a class being certified, a court lacks jurisdiction to rule on the arbitration obligations of the unnamed putative class members and that a defendant does not waive its rights to bring such a motion at the appropriate time when it has advised the Court and parties of its intent to do so).

The Complaint alleges names, phone numbers, driver's license numbers, addresses, dates of birth, and email addresses "were impacted for more than 26 thousand US residents" as a result of the Incident. *Id.* at ¶ 7; *see also id.* at ¶ 31. Plaintiff alleges he received a notice from Bitcoin Depot regarding the Incident.[3] *Id.* at ¶ 30. And, that notice identifies the same data elements of Plaintiff's as potentially impacted.[4] The notice does not reference Social Security numbers, nor does Plaintiff allege he provided his Social Security number to Bitcoin Depot.

Plaintiff does not allege his information was misused because of the Incident. He does not allege he suffered any type of fraud or identity theft. Instead, he alleges:

> Plaintiff suffered actual injury from having his PII exposed and/or stolen as a result of the Data Breach including, but not limited to: (a) entrusting PII to Defendant that he would not have had Defendant disclosed it lacked data security practices adequate to safeguard its data including users' PII; (b) damages to and diminution in the value of his PII--a form of intangible property that he entrusted to Defendant as a condition of receiving healthcare services [*sic*]; (c) loss of privacy; (d) continuous imminent and impending injury arising from the increased risk of financial, medical [*sic*], and identity fraud and theft; (e) continuous imminent and impending injury arising from the increased risk of physical assault by crypto criminals, and (f) time and expense of mitigation efforts as a result of the Data Breach.

Compl. at ¶ 126.

---

[3] The notice sent to Plaintiff, a copy of which is attached as Exhibit A to the Declaration of Ron Moore, is incorporated by reference in the Complaint, and thus may be considered by the Court. *See Gibson v. Equifax Info. Servs.*, No. 5:18-cv-00465, 2020 U.S. Dist. LEXIS 269752, at *2 (M.D. Ga. Jan. 14, 2020).

[4] *See* Declaration of Ron Moore ("Moore Decl."), Ex. A.

Plaintiff also does not allege his personal information was found on the dark web or offered for sale. Rather, Plaintiff speculates with no factual basis that his information may have been published on the dark web because "that is the *modus operandi* of cybercriminals that commit cyberattacks of this type." *Id.* at ¶¶ 37, 49. Further, while Plaintiff points to two data breaches suffered by companies in the cryptocurrency space **after** the Incident (*id.* at ¶¶ 43-44), Plaintiff alleges no facts or circumstances to support an argument that Bitcoin Depot knew or should have known it was any more at risk for a data security incident than any other company.

## III.   LEGAL STANDARDS FOR DISMISSAL

### A.   Dismissal Under Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is proper where a plaintiff lacks the requisite Article III standing to pursue the relief requested. *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n.8 (11th Cir. 1993). Plaintiff has the burden of establishing Article III standing. *See Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021).

To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

(1992)).  The term "concrete" means "'real,' and not 'abstract.'" *Id.* While a threat of harm can satisfy Article III standing requirements, the hypothetical harm alleged must be "certainly impending" or there must be "a substantial risk of the harm." *See Tsao*, 986 F.3d at 1339; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Moreover, "[w]here a hypothetical future harm is not certainly impending, plaintiffs cannot manufacture standing merely by inflicting harm on themselves." *Tsao*, 986 F.3d at 1338.

B.    Dismissal Under Rule 12(b)(6)

A complaint should be dismissed under Rule 12(b)(6) where it appears the facts alleged fail to state a "plausible" claim for relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  In ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam).  "'However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.'" *Glover v. Lockheed Martin Aero*, No. 1:19-CV-0198, 2019 U.S. Dist. LEXIS 249536, *4 (N.D. Ga. Sept. 17, 2019) (quoting *Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

Under these standards, Plaintiff's claims should be dismissed.

## IV. ARGUMENT

### A. Plaintiff Lacks the Requisite Article III Standing to Pursue His Claims Against Bitcoin Depot

To establish Article III standing, Plaintiff must show he "'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Tsao,* 986 F.3d at 1337 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2017)). Plaintiff "bears the burden of establishing these elements by alleging facts that 'plausibly' demonstrate each element." *Id.* Plaintiff fails to meet that burden.

The Eleventh Circuit made clear that "[e]vidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing." *Id.* at 1344. Where, as here, a plaintiff has not alleged an actual injury (*e.g.*, fraud, identity theft, or other misuse of the data potentially exposed), a plaintiff seeking to establish Article III standing based on a threat of future harm must show the alleged harm is "certainly impending" or there is a "substantial risk" of such harm. *Id.* at 1339.

In considering issues of standing, Georgia courts have looked at the type of the data and whether the data is available on the dark web as important when evaluating whether a plaintiff has pled risk of harm. First, courts look to the nature of the data, particularly whether the type of data impacted can be used to perpetrate identity theft—specifically, Social Security numbers. In *Tsao*, the Eleventh Circuit found the plaintiff could not demonstrate a substantial risk of future identity theft or

that identity theft was certainly impending because it was unlikely the credit card data that may have been stolen in the data breach, including cardholder name, account number, expiration date, card verification value ("CVV"), and PIN data for debit cards raised a substantial risk of identity theft. *Id.* at 1343-44. Second, courts look for an allegation of actual misuse—specifically, exposure of plaintiff's information "'for theft and sale on the dark web.'" *See Green-Cooper v. Brinker Int'l*, 73 F.4th 883, 889-90 (11th Cir. 2023) (holding the allegation of posting of the stolen data on the dark web for sale to be "critical"). Failure to make such pleading is fatal. *Id.*[5]

Here, Plaintiff pleads neither. First, in paragraphs 7 and 31 of the Complaint, citing to two articles relying on a sample notice letter, Plaintiff alleges the following data elements were impacted in the Incident: name, phone number, driver's license

---

[5] The Northern District of Georgia is in accord. *See Bland v. Urology of Greater Atlanta, LLC*, No. 1:23-cv-132, 2024 U.S. Dist. LEXIS 118794, at *10-11 (N.D. Ga. Mar. 14, 2024) (finding plaintiff failed to establish an imminent threat of identity theft because plaintiff did not "plausibly allege that anyone misused his or the class members' stolen PII/PHI, that the PII/PHI included Social Security numbers, that the PII/PHI included other information that posed equally 'unique risks' or 'unequivocal damage,' or that this case otherwise falls outside the general rule requiring actual misuse of stolen information to establish an imminent risk of future harm"); *Teague v. AGC Am., Inc.*, No. 1:24-cv-00823, 2025 U.S. Dist. LEXIS 102564, at *11 (N.D. Ga. Jan. 6, 2025) (finding standing based on allegation that plaintiff's information is now exposed for theft and sale on the dark web is critical).

number, address, date of birth, and email address.[6] The notice linked in those articles is the same notice sent to Plaintiff. Neither reference Social Security numbers as a data element potentially impacted in the Incident. Although Plaintiff baldly alleges in paragraph 107 of the Complaint that "[t]he PII exposed included names, Social Security numbers, dates of birth, and financial account numbers[,]" that allegation of exposed Social Security numbers (and financial account numbers) should be ignored as it directly contradicts both Plaintiff's prior factual allegations regarding the data potentially exposed as well as the articles and sample notification letter relied upon in support of those allegations, and the actual notice sent to Plaintiff.[7] *See, e.g.*, *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits [attached to a complaint] contradict the general and conclusory allegations of the pleading, the exhibits govern.").

---

[6] The Court may consider these documents in ruling on this Motion. *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("[D]ocuments attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6)."). For the Court's convenience, the articles and linked notice cited in Paragraphs 7 and 31 of the Complaint are attached hereto as Exhibits A and B.

[7] This allegation appears to be the result of sloppy pleading, specifically a copy and paste from a prior complaint, which is similarly evident from the allegations throughout the Complaint suggesting Bitcoin Depot provides healthcare services and the Incident resulted in the exposure of Plaintiff's protected health information (PHI). *See, e.g.*, Compl. at ¶ 204 ("Defendant's acts and omissions have materially affected the intended purpose of the implied contracts requiring Plaintiff and Class Members to provide their PII in exchange for **medical treatment and services**.") (emphasis added); *see also id.* at ¶¶ 126, 212.

To the extent Plaintiff attempts to rely on cases concerning Social Security numbers,[8] Plaintiff fails to allege his was subject to the Incident.

Second, Plaintiff does not plausibly plead the posting or sale of his data on the dark web. To the contrary, all of Plaintiff's allegations--based upon information and belief--concerning the purported exposure of his data on the dark web are clearly nothing more than speculation and conjecture and should therefore be disregarded.[9]

---

[8] Indeed, Plaintiff's own allegations expressly identify only Social Security numbers as a means of committing fraud or identity theft. *See* Compl. at ¶ 84 ("Identity thieves use stolen personal information **such as Social Security numbers** for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.") (emphasis added); ¶ 85 ("Identity thieves can also use **Social Security numbers** to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name **and Social Security number** to obtain government benefits; or file a fraudulent tax return using the victim's information.") (emphasis added); ¶ 86 ("In addition, thieves may obtain a job using the victim's **Social Security Number**, rent a house, or receive medical services in the victim's name.") (emphasis added); *see also id.* at ¶¶ 95-102 (alleging difficulty in detecting fraudulent activities that can be engaged in with a Social Security number which is hard to change or cancel).

[9] *See* Compl. at ¶ 37 ("Upon information and belief, Plaintiff's and Class Members' PII was subsequently published on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyberattacks of this type."); ¶ 49 ("The disclosed, accessed, and/or acquired PII of Plaintiff and Class Members is, upon information and good faith belief, already available on the dark web."). Moreover, the Court should reject Plaintiff's "upon information and belief" allegations as this information is not in the possession or control of another. As part of his due diligence, prior to filing the Complaint, Plaintiff could have (and should have) hired a consultant to search the dark web for the existence of the Bitcoin Depot data potentially impacted in the Incident. Such services are readily available. *See, e.g.*, Kroll, *Deep And Dark Web Monitoring for Business: Uncovering Hidden Risk*s (Sept. 2, 2024), https://www.kroll.com/en/publications/cyber/deep-dark-web-monitoring-business-uncovering-hidden-risks (last visited Oct. 22, 2025); KPMG,

*See Tsao*, 969 F.3d at 1338 (to be concrete for purposes of Article III standing, an alleged injury cannot be conjectural or hypothetical and "mere conclusory statements do not suffice." (internal quotations omitted)).

Because Plaintiff failed to adequately allege an imminent or substantial risk of identity theft or fraud, it necessarily follows that his other alleged harms, including mitigation expenses (*see* Compl. at ¶¶ 128-29), also do not establish an injury in fact for purposes of Article III standing. *See Tsao*, 985 F.3d at 1345 ("Tsao cannot conjure standing here by inflicting injuries on himself to avoid an insubstantial, non-imminent risk of identity theft."). Plaintiff's failure to meet his burden of establishing Article III standing requires the dismissal of his Complaint.

B.    Plaintiff's Claims Fail as a Matter of Law

Even assuming Plaintiff has Article III standing, his claims still fail.

1.    **Plaintiff's negligence claim fails as a matter of law**

Plaintiff's negligence claim is rooted in the erroneous presumption that, because the Incident occurred, Bitcoin Depot must have been negligent. That is not the law. Rather Plaintiff must plead adequate facts to show not only that certain duties exist, but also that Bitcoin Depot breached such duties.

---

*KPMG Cyber Managed Services*, (https://kpmg.com/sg/en/services/advisory/risk-consulting/cyber-security-services/managed-services.html (last visited Oct. 22, 2025). Plaintiff's failure to take such a basic step should greatly minimize the plausibility of Plaintiff's allegations. *Provost v. Aptos, Inc.*, No. 1:17-CV-02120-ELR, 2018 WL 1465766, at *3 (N.D. Ga. Mar. 12, 2018).

In Georgia, a claim for negligence requires proof of: (i) the existence of a duty on the part of the defendant; (ii) a breach of that duty; (iii) causation of the alleged injury; (iv) damages resulting from the alleged breach of the duty. *See Purvis v. Aveanna Healthcare,* 563 F. Supp. 3d 1360, 1366 (N.D. Ga. 2021) (quoting *Rasnick v. Krishna Hosp., Inc.*, 289 Ga. 565, 713 (2011)). Plaintiff's negligence claim fails because he has failed to plausibly allege both a duty owed to him by Bitcoin Depot and damages caused by Bitcoin Depot's actions.

> **a.      Plaintiff has not established a duty owed to him by Bitcoin Depot because he has failed to plausibly allege the Incident was reasonably foreseeable.**

"The threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care." *Id.* (internal quotations omitted). In the context of data breach cases, recognizing the lack of clear guidance from the Georgia Supreme Court,[10] Georgia federal courts have acknowledged there

---

[10] In *Dep't of Labor v. McConnell* ("*McConnell*"), 305 Ga. 812, 812-13, 815-16, 818 (2019), the Georgia Supreme Court disapproved its prior holding in *Bradley Center v. Wessner*, 250 Ga. 199 (1982), to the extent it had created a general legal duty "to all the world not to subject others to an unreasonable risk of harm[,]" and affirmed the dismissal of a negligence claim arising out of the defendant's unauthorized emailing of a spreadsheet containing "the name, social security number, home telephone number, e-mail address, and age of 4,757 individuals" finding the defendant did not owe plaintiff a duty to protect his personal information against negligent disclosure under a common law duty to all the world or the two statutes cited by the plaintiff. The Court noted, however, that it was not considering "whether a duty might arise on these or other facts from any other statutory or common law source, as no such argument has been made here." *Id.* at 816 n.5.

is no presumed duty simply because a defendant suffered a data breach (*e.g.*, no strict liability), and have found a duty to exist only where a plaintiff has plausibly alleged the risk of a data breach was reasonably foreseeable by the defendant. *See Ramirez v. Paradies Shops, LLC* 69 F.4th 1213, 1220 (11th Cir. 2023) (relying on allegations regarding defendant's alleged size and sophistication (more than 10,000 current employees and $1 billion in sales) and the alleged impact to an "extensive database of prior employees' PII" *including Social Security numbers*); *Purvis,* 563 F. Supp. 3d at 1369-70 (finding breach was reasonably foreseeable where threat of data breaches to healthcare providers was widely and publicly known).

Plaintiff's Complaint contains no such plausible allegations. To the contrary, while Plaintiff contends the Incident was reasonably foreseeable because "Defendant collected, stored, and had access to a wealth of highly sensitive personal records and data" and because of the existence of "other highly publicized data breaches at numerous companies in the financial services industry including cryptocurrency services," (Compl. at ¶ 42), Plaintiff says nothing about Bitcoin Depot's alleged size or sophistication, concedes his Social Security number was not exposed, and his two examples of other data breaches suffered by companies in the

cryptocurrency industry both occurred **after** the Incident in June 2024.[11] Plaintiff

has therefore failed to establish a duty owed to him by Bitcoin Depot.

### b. Plaintiff has not plausibly alleged causation or damages.

Plaintiff's negligence claim also fails because he has not alleged facts

plausibly establishing causation or damages. Where, as here, a plaintiff seeks to

establish damages based on an alleged risk of future harm, Georgia courts require

the risk to be imminent and substantial, and have found this shown where the

plaintiff alleges facts that plausibly establish his or her impacted data is or will be

on the dark web, offered to criminals for sale, and/or the data included Social

Security numbers. *See, e.g.*, *Everhart v. Colonial Pipeline Co.*, No. 1:21-CV-3559-

MHC, 2022 U.S. Dist. LEXIS 155295, *8, 10-11 (N.D. Ga. July 22, 2022)

(dismissing negligence claim where plaintiffs "fail[ed] to allege that their data had

actually been sold on the black market, and provide[d] only speculative allegations

related to potential identity theft").[12]

---

[11] *Compare* Compl. ¶¶ at 43-44 (identifying data breach suffered by Byte Federal in December 2024 and data breach suffered by Coinbase in May 2025) *with* ¶ 6 (suspicious activity detected by Bitcoin Depot on June 23, 2024, and investigation completed by July 18, 2024).

[12] *See, e.g.*, *Collins*, 307 Ga. at 556, 563 (holding plaintiffs adequately pled an imminent and substantial risk of identity theft because plaintiffs alleged their "personal data [including Social Security numbers] has been stolen on a mass scale by a criminal, who in turn has offered it for sale to other criminals"); *Teague,* 2025 U.S. Dist. LEXIS 102564 at *16 (holding plaintiff alleged an imminent and substantial risk of identity theft because plaintiff alleged the data exposed was "the

Plaintiff comes nowhere close. Plaintiff does not allege his potentially impacted data is or will be on the dark web or offered to criminals for sale, even though his Complaint was filed more than thirteen months after the Incident. And, as set forth above, Plaintiff does not—and cannot—plausibly allege his Social Security number was exposed as a result of the Incident. As such, Plaintiff has failed to adequately allege causation and damages sufficient to maintain his negligence claim, which is a separate and independent basis for the dismissal.

### 2. Plaintiff's negligence *per se* claim also fails

Plaintiff's negligence *per se* claim fares no better. In Georgia, to establish a negligence *per se* claim, a plaintiff must allege: (1) a statute was violated; (2) the person injured by the violation is within the class of persons the statute was intended to protect; and (3) the harm complained of was the harm the statute was intended to guard against. *Murphy v. Bajjani*, 282 Ga. 197, 200 (2007). But again, with no allegations establishing causation and injury, Plaintiff's claim fails. *See, e.g.*, *Central Anesthesia Assoc. v. Worthy*, 254 Ga. 728, 730 (1985) ("[N]egligence per se

_____

type of information that would typically be necessary to open an account or commit fraud, including names and Social Security numbers," still in the hand of criminals, and "the stolen information remains unencrypted and available for purchase on the dark web"); *Bracy*, 2025 U.S. Dist. LEXIS 28981 at *2, 8-9 (finding plaintiff's allegations that the specific cybercriminal ransomware gang claiming responsibility for the breach that resulted in the exfiltration of personal information including Social Security numbers had announced data from the breach was coming soon and had already leaked six gigabytes of that data sufficient to establish causation and damages).

supplies only the duty and breach of duty elements of a tort, and the plaintiffs must still prove a causal connection (proximate cause) between the breach of this statutory duty and the injuries sustained . . . as well as their damages.").

### 3. Plaintiff cannot state a claim for invasion of privacy because there is no evidence of an intrusion by Bitcoin Depot

In Georgia, there are four distinct torts under the common name of invasion of privacy, including intrusion upon seclusion, public disclosure of private embarrassing facts, false light, and appropriation of name or likeness. *Purvis*, 563 F. Supp. 3d at 1377. While less than clear, Plaintiff appears to be asserting a claim for intrusion upon seclusion. *See, e.g.*, Compl. at ¶ 183 ("The Data Breach constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.").[13]

To maintain this claim, Plaintiff must allege facts demonstrating **Bitcoin Depot** engaged in a "prying or intrusion" into his private affairs. *See Purvis*, 563 F. Supp. 3d at 1377 (citing *Yarbray v. S. Bell Tel. & Tel. Co.*, 261 Ga. 703, 705 (1991)).

---

[13] To the extent Plaintiff is attempting to assert a public disclosure claim, that claim fails because Plaintiff has not established a disclosure of information that would "normally affect a person's reputation, which is the interest the tort of public disclosure of embarrassing private facts was meant to remedy[,]" or the disclosure of information that is "offensive and objectionable." *McConnell*, 305 Ga. at 818-819 (holding plaintiff had not stated a claim for public disclosure of embarrassing facts based on the alleged disclosure of "name, social security number, home telephone number, e-mail address, and age of individuals.").

Yet, it is clear from Plaintiff's allegations that the only purported intrusion in this case was the alleged acquisition of Plaintiff's information by a **cybercriminal**. *See* Compl. at ¶¶ 181-83. As a result, Plaintiff's invasion of privacy claim fails as a matter of law. *See Purvis*, 563 F. Supp. 3d at 1377 (dismissing the invasion of privacy claim because plaintiffs failed to "plausibly allege[] any facts indicating that Defendant—as opposed to the third party that allegedly carried out the Data Breach—actively participated in the alleged intrusion into Plaintiffs' affairs").

### 4. Plaintiff cannot establish the necessary meeting of the minds to maintain a claim for breach of an implied contract

"An implied contract is one not created or evidenced by distinct and explicit language, but inferred by the law as a matter of reason and justice." *Purvis*, 563 F. Supp. 3d at 1380. To establish an implied contract, a plaintiff must allege facts establishing a meeting of minds as to the key contractual provisions. *Bracy v. Americold Logistics LLC*, No. 1:23-CV-5743-TWT, 2025 U.S. Dist. Lexis 28981, at *14 (N.D. Ga. Feb. 19, 2025). Here, Plaintiff has alleged no facts that would even suggest, much less establish, a "meeting of the minds" as to an agreement by Bitcoin Depot to safeguard his personal information against theft by cybercriminals. Indeed, Plaintiff's conclusory allegation that he and Bitcoin Depot entered an implied contract "[t]hrough their course of conduct" for Bitcoin Depot "to implement data security adequate to safeguard and protect" his personal information (*see* Compl. at ¶ 199) is of no moment as it is nothing more than a legal conclusion. *See, e.g.,*

*Purvis*, 563 F. Supp. 3d at 1377-78 ("[L]abels and legal conclusions offer no support to the sufficiency of the complaint.") (internal quotations omitted).

Further, Plaintiff generally references a Privacy Policy in the Complaint and concedes it "states that computer hackers may circumvent its security measures and 'may gain access to certain portions of your personal information.'" *See* Compl. at ¶ 27. Even setting aside the difficulty in reconciling this express disclaimer with a purported meeting of the minds sufficient to establish an implied contract to protect his personal information, Plaintiff does not allege that he was aware of, read, or relied on the Privacy Policy prior to providing his personal information to Bitcoin Depot. Thus, Plaintiff's implied contract claim should be dismissed. *See, e.g.*, *Bracy*, 2025 U.S. Dist. LEXIS at *16 (relying on *In re Equifax, Inc., Consumer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1332 (N.D. Ga. 2019) in dismissing implied contract claim based on Privacy Policy where plaintiffs did not allege that they read the Privacy Policy, or otherwise relied upon or were aware of the representations and assurances made in the Privacy Policy when they chose to use the defendant's services); *see also In re TRC Staffing Servs.*, No. 1:24-cv-02398, 2025 U.S. Dist. LEXIS 127638, at *8 (N.D. Ga. June 18, 2025) (dismissing breach of implied contract claim arising out of data breach where plaintiffs "failed to plead any facts suggesting that [p]laintiffs and TRC had a meeting of the minds whereby TRC agreed to safeguard their personally identifiable information").

### 5. Plaintiff's unjust enrichment claim fails because he did not confer a benefit on Bitcoin Depot

"The essential elements for an unjust enrichment claim under Georgia law are that (1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensative would be unjust." *Bracy*, 2025 U.S. Dist. Lexis at *17 (internal quotations omitted). Plaintiff's claim fails because he did not confer any benefit on Bitcoin Depot.

Plaintiff contends he "conferred a monetary benefit on Defendant by paying money for financial services that relied on Defendant to render certain services, a portion of which was intended to have been used by Defendant for data security measures[,]" and that he "further conferred a benefit on Defendant by entrusting [his] PII to Defendant from which Defendant derived profits." Compl. at ¶ 209. Plaintiff also asserts Bitcoin Depot "enriched itself by saving the costs it reasonably should have expended on data security measures to secure" Plaintiff's personal information. *Id.* at ¶ 210.

None of these allegations demonstrate a benefit to Bitcoin Depot. Indeed, Plaintiff has pointed to no benefit derived by Bitcoin Depot from simply having his personal information. To the contrary, that information was necessary and commonly collected (as Plaintiff concedes) in connection with Bitcoin Depot's standard operating procedures associated with the registering of an account and setting up a Bitcoin wallet. *Id.* at ¶ 24. As such, Bitcoin Depot clearly did not derive

a benefit from Plaintiff's personal information. *See, e.g.*, *Bracy*, 2025 U.S. Dist. LEXIS 28981 at *18-19 (dismissing unjust enrichment claim where the closest plaintiffs got to alleging defendant derived value from their information was alleging it "allows Defendant to operate its business and generate revenue" which was "too conclusory to plausibly state that Plaintiffs conferred a benefit") (internal quotations omitted). Plaintiff's allegation Bitcoin Depot benefited by saving on cybersecurity also does nothing to show a benefit conferred by Plaintiff. *See, e.g.*, *id.* at *20 ("The decisions regarding what cybersecurity measures to implement and how much to spend on them were decisions made by the Defendant . . . it cannot be plausibly maintained that any decision to save money on cybersecurity measures was a benefit conferred (directly or indirectly) by the Plaintiffs to the Defendant."). As a result, Plaintiff's unjust enrichment claim should also be dismissed.

### 6. Plaintiff cannot establish a fiduciary relationship between himself and Bitcoin Depot

Plaintiff has not plausibly alleged a fiduciary relationship with Bitcoin Depot. "A fiduciary duty exists 'where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith.'" *Clayton v. PruittHealth, Inc.*, No. 1:24-CV-2960, 2025 U.S. Dist. LEXIS 108543, at *16 (N.D. Ga. June 9, 2025) (quoting *Bedsole v. Action Outdoor Advert. JV, LLC*, 325 Ga. App. 194, 201 (2013)).

In this case, Plaintiff alleges Bitcoin Depot owed him a fiduciary duty to safeguard his personal information due to a purported "special relationship" between himself and Bitcoin Depot whereby Bitcoin Depot supposedly "became guardian" of his personal information. *See* Compl. at ¶ 219. Notably missing, however, are any alleged facts that would establish any special circumstances that required Bitcoin Depot to act in the utmost good faith and put its interest above others. Rather, Plaintiff alleges nothing more than the provision of his data in a business relationship, which other courts have already found insufficient to establish a fiduciary relationship giving rise to a fiduciary duty to safeguard that information.

For example, in *Purvis*, plaintiffs alleged a "special relationship" existed because they were required to provide defendant with that information as a condition of employment. 563 F. Supp. 3d at 1384. The court rejected this argument, finding "the gathering of such information is a common practice for almost any form of employment and does not by itself suggest that" defendant owed them a duty "to keep their information secure." *Id.* The court concluded "there are no alleged facts from which the Court can reasonably infer that the employee-employer relationship in this case was anything other than the arm's-length employment relationship that generally does not give rise to a fiduciary duty under Georgia law." *Id.*[14]

---

[14] *See also Clayton*, 2025 U.S. Dist. LEXIS 108543 at *17-18 (dismissing fiduciary duty claim where plaintiff alleged she was "in a poor position to protect her own interests regarding the collection and retention of highly sensitive employee data"

Even in the context of a banking relationship, which does not exist here, Georgia courts have held a fiduciary relationship with an account holder does not exist absent special circumstances. *See Focus Entm't Int'l v. Wachovia Bank N.A.*, No. 1:04-CV-2649, 2005 U.S. Dist. LEXIS 57722, at *19 (Nov. 18, 2005). Plaintiff's allegations make clear his provision of personal information to Bitcoin Depot was part of the common process of registering for an account and establishing a Bitcoin wallet, and that he did nothing more than engage in arms-length transactions of converting cash to Bitcoin. *See* Compl. at ¶¶ 22-24. Therefore, Plaintiff's fiduciary duty claim should also be dismissed.

### 7. Plaintiff has failed to establish an entitlement to injunctive relief under the UDTPA

Plaintiff has not sufficiently alleged a basis for any injunction. Under the UDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." O.C.G.A. § 10-1-373(a). "The UDTPA offers

---

because obtaining such information was "common practice for almost any form of employment" and plaintiff's provision of such information did not "create a fiduciary relationship or suggest that [plaintiff] was relying upon or trusting [defendant] in unique or exceptional ways") (internal quotations omitted); *McConnell*, 305 Ga. at 817-18 ("[T]he complaint alleged merely that the Department, as the gatekeeper to unemployment benefits, required McConnell and the others to provide personal information in order to receive benefits. Such conduct is common between citizens and government agencies and is insufficient to show a fiduciary relationship.").

only injunctive relief where the plaintiff has established a likelihood of future damage, but it does not address past harm." *Collins v. Athens Orthopedic Clinic*, 356 Ga. App. 776, 779 (2020). Thus, to survive a motion to dismiss, a plaintiff must show he or she is "likely to be damaged in the future by an unfair trade practice." *Id.* Plaintiff has not done so.

Plaintiff's claimed need for injunctive relief in this case boils down to his speculation that a future cyberattack potentially impacting his personal information is possible simply because he does not have sufficient details regarding the Incident, including any remedial actions taken, and he therefore remains "uninformed and confused as to the adequacy of Defendant's data security measures and its ability to protect the PII entrusted to them." Compl. at ¶¶ 236-238. These, however, are precisely the type of allegations courts have previously found insufficient to state a claim under the UDTPA. *See, e.g.*, *Bracy*, 2025 U.S. Dist. LEXIS 28981 at *24 (dismissing UDTPA claim where plaintiffs failed to "provide any explanation as to how their risk of future harm is any different based on whether or not they know the scope of the data breach or the subsequent remedial actions taken" and "[w]ithout doing so, the Court cannot find that they have plausibly alleged a likelihood of future damages stemming from the alleged unfair trade practice"). The Court should do the same here and dismiss Plaintiff's UDTPA claim.

### 8. Plaintiff has failed to adequately allege facts sufficient to state a claim under O.C.G.A. § 13-6-11

Plaintiff's claim under O.C.G.A. § 13-6-11 fails. Plaintiff offers a single conclusory allegation that "Defendant acted in bad faith and caused Plaintiff unnecessary trouble and expense with respect to the events underlying this litigation." Compl. at ¶ 245. From there, he proclaims Bitcoin Depot violated Section 5 of the FTC Act and his constitutional and common law privacy rights by failing to protect his personal information. *See id.* at ¶¶ 246-53. However, the Complaint is silent with respect to any specific factual allegations demonstrating Bitcoin Depot's alleged bad faith or actions intentionally taken to cause him unnecessary trouble or expense similar to those other courts have found sufficient to state claim under O.C.G.A. § 13-6-11. Likewise, Plaintiff's O.C.G.A. § 13-6-11 should be dismissed because he does not allege Bitcoin Depot suffered a prior data breach or any other facts suggesting bad faith or an intent to cause him unnecessary trouble and expense.

## V.    CONCLUSION

Based on the foregoing, Defendant respectfully the Court enter an order dismissing Plaintiff's Complaint in its entirety.

Dated: October 27, 2025             Respectfully submitted,

*/s/ Ronald I. Raether, Jr.*
Ronald I. Raether. Jr.
*(admitted pro hac vice)*

Troutman Pepper Locke LLP
100 Spectrum Center Drive
Suite 1500
Irvine, CA 92618
Tel: (949) 622-2722
Ron.Raether@troutman.com

Charles E. Peeler
Georgia Bar No. 570399
Cindy D. Hanson
Georgia Bar No. 323920
Troutman Pepper Locke LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
Tel: (404) 885-3800
Fax: (404) 885-3900
Charles.Peeler@troutman.com
Cindy.Hanson@troutman.com
*Counsel for Defendant Bitcoin Depot Operating, LLC d/b/a Bitcoin Depot*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify on the 27th day of October 2025, that the foregoing has been prepared in Time New Roman, 14-point font, and otherwise complies with the requirements of Local Rule 5.1.

*/s/ Cindy D. Hanson*
Cindy D. Hanson