**THE UNITED STATES DISTRICT COURT**
**NOTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| QUINCEY HALL, *individually and on behalf of all others similarly situated*,<br><br>    Plaintiff,<br><br>  v.<br><br>BITCOIN DEPOT, INC.,<br><br>      Defendant. | Case No.:<br><br>1:25-cv-04317-WMR |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
<u>**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

# I. INTRODUCTION & FACTUAL BACKGROUND

Bitcoin Depot attempts to avoid liability for a serious lapse in its data security by asking the Court to unquestioningly accept its assertion that cybercrime is just an unavoidable part of modern life. Def.'s Mem. at 1. While existence of cybercriminals is indeed the "unfortunate reality of modern life," *id.*, so too is the troubling trend of companies collecting and storing highly sensitive information of millions of Americans without properly securing this data. Further, when a breach is made public, many companies go out of their way to minimize or avoid publicity – and liability – for the harm at issue, whether by delaying notification, minimizing the extent of the intrusion and amounts or types of data stolen, or downplaying the number of victims and sensitivity of the stolen data.

Such is the case here. Bitcoin Depot is the leading Bitcoin ATM operator in the United States and it collects personal information from all users as part of its standard account registration and account opening process. Compl. ¶¶ 2, 23-24. On June 23, 2024, Bitcoin Depot detected suspicious activity on its network and initiated an internal investigation, which concluded on July 18, 2024. *Id.* ¶ 6. According to Bitcoin Depot's filings with state regulatory agencies and notices sent to customers, at least 26,732 victims, including Plaintiff, had their personally identifiable information involving names, driver's license numbers, phone numbers, addresses, emails and dates of birth ("PII") stolen during the cyber intrusion – alongside the

fact that the victims are cryptocurrency owners (the "Data Breach"). *Id*. ¶¶ 7, 31. Despite the Data Breach being detected over a year ago, Bitcoin Deport began issuing notice letters to impacted individuals only on or about July 9, 2025 (allegedly due to a parallel investigation by law enforcement). *Id*. ¶¶ 6, 9.

Defendant discovered the Data Breach more than year and a half ago. Yet Bitcoin Depot has yet to release any meaningful details of the breach, leaving Plaintiff and Class Members in the dark regarding the cause of the breach, its duration, the identity of the hackers, the whereabouts of Defendant's customers' data, particular vulnerabilities in Defendant's security systems and practices that led to the Data Breach, whether such vulnerabilities have been fixed, or whether Defendant's customers' sensitive information is at risk at being stolen in another criminal attack.

Despite this troubling lack of transparency, its inadequate security measures and the value of stolen data to criminals, Bitcoin Depot makes bold (yet entirely unsupported) claims presenting itself as a "victim of a sophisticated data security attack" and argues that [i]t was clear from the beginning that Bitcoin Depot customers were not the target of the criminal hacker." Def.'s Mem. at 1-2. Bitcoin Depot continues to ignore its real victims by attempting to minimize the harms already suffered by Plaintiff and Class Members, as well as the continuing risks of fraud, identity theft, misuse and even physical harm with which they now must live.

The Georgia Supreme Court and numerous other courts have held that the fact that stolen data is already in criminals' hands is persuasive in finding data breach victims faced a substantial risk of harm. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021). And Defendant acknowledges as much in its own Notice of the Data Breach, advising Plaintiff and Class Members to "remain vigilant for incidents of fraud and identity theft, especially during the next 12-24 months." *See* Def.'s Mem., Ex. A. To make matters worse, Bitcoin Depot places the burden of identity monitoring squarely on its customers, refusing to provide any identity-theft protection or credit monitoring services to the Data Breach victims, further highlighting its utter disregard for the security of data entrusted to it. *See id.*; Compl. ¶ 40.

Plaintiff alleges that Bitcoin Depot knew, or should have known, that hackers would target its large repository of its users' sensitive data because such data is particularly valuable to criminals and because of warnings from the industry and regulators about the risk of cyber attacks facing financial services companies. Compl. ¶¶ 8, 41-42, 56, 58-60. Further, Plaintiff alleges that Defendant's customers were required to provide their data to Bitcoin Depot as part of receiving its services and would not have done so had they known that Defendant uses inadequate data security measures. *Id.* ¶¶ 3, 23, 28, 145. Defendant represented to Plaintiff and Class Members that their sensitive information will be protected and access to it will be

strictly limited and that it has security measures in place to protect the loss, misuse and alteration of its customers' personal information under its control. *Id*. ¶ 27. Plaintiff alleges that by taking this sensitive data Defendant assumed a duty to securely store and protect it, and breached this duty by, among other missteps, failing to take adequate steps to prevent and stop the Data Breach including not having adequate data security practices in place. *See id*. ¶¶ 4, 10.

Bitcoin Depot moves the Court to dismiss Plaintiff's claims, alleging, in large part, that it somehow had no obligation to protect Plaintiff's information that was entrusted to it and that Plaintiff suffered no injury. Defendant's claims are contrary to facts in the Complaint, and to law establishing that Bitcoin Depot owed Plaintiff and Class Members a duty, both under Georgia common law and the FTC Act, to protect the sensitive data it collected. Defendant's inadequate data security measures constitute a breach of the duty it owed to Plaintiff and Class Members, which put them at risk. Plaintiff has adequately stated claims under common and state law and the Court should deny Bitcoin Depot's Motion to Dismiss in its entirety.[1]

## II.     LEGAL STANDARDS

### A.     Motion to dismiss under Rule 12(b)(1)

To establish Article III standing, a plaintiff's injury must be (1) concrete, (2) particularized, and (3) either actual or imminent. *Lujan v. Defs. of Wildlife*, 504

---

[1] Plaintiff dismisses his claim for invasion of privacy without prejudice.

U.S. 555, 560 (1992). "An injury is concrete if the harm is 'real.'" *In re Equifax Inc.*, 999 F.3d at 1262 (citations omitted).

A plaintiff can satisfy the concreteness element by showing a material risk of harm. *Id.* (citations and quotation marks omitted). "When there is no actual injury, an imminent injury must be 'certainly impending,' as allegations of 'possible future injury are not sufficient.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). However, it "need not be 'literally certain' that the injury will come about." *Id.* (quoting *Clapper*, 568 U.S. at 414 n.5). Instead, the plaintiff must only show that there is a "substantial" risk of such injury. *Clapper*, 568 U.S. at 414 n.5.

**B.    Motion to dismiss under Rule 12(b)(6)**

A complaint may only be dismissed if the facts alleged fail to state a "plausible" claim. *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *3 (N.D. Ga. May 18, 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); Fed. R. Civ. P. 12(b)(6)). A claim survives even if it is "improbable" a plaintiff will be able to prove those facts or the odds of recovery are "remote and unlikely." *Id.* (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007)). "[T]he court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff." *Id*. Generally, "the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *In re Equifax, Inc.,* 362 F. Supp. 3d at 1311.

Plaintiff has more than met these standards here.

## III. ARGUMENT

### A. Plaintiff Alleges Facts Sufficient to Confer Article III Standing

Plaintiff has standing under the clear Eleventh Circuit precedent of *Equifax*. There, the Eleventh Circuit found that "actual identity theft is ***by no means required*** when there is a sufficient risk of identity theft." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021) (emphasis supplied). Moreover, where a plaintiff has not alleged an actual injury (*e.g.*, fraud, identity theft, or other misuse of the data potentially exposed), a plaintiff may nevertheless establish Article III standing by alleging a threat of future harm is "certainly impending" or there is a "substantial risk" of such harm. *In re Equifax Inc.*, 999 F.3d at 1262. Yet, Defendant misstates the law and argues Plaintiff fails to establish Article III standing simply because Plaintiff's Social Security number was not accessed and because Plaintiff's PII has not been exposed on the dark web. Def.'s Mem. at 8-9. Defendant admits that unauthorized individuals accessed and obtained Plaintiff's and Class Members' PII. Def.'s Mem., Ex. A. A substantial risk of future harm exists where – like here – criminals have stolen personal data and continue to possess it. *See Tracy v. Elekta, Inc.*, 667 F. Supp. 3d 1276, 1283 (N.D. Ga. 2023) ("While they have not alleged that their data is actually for sale on the dark web or elsewhere, they have alleged that it is in the hands of criminals."); *Teague v. AGC*

*America, Inc.*, 2025 WL 1527738, at *3 (N.D. Ga. Jan. 6, 2025) (alleged data was "in the hands of criminals"*).*

Recently three Northern District of Georgia orders and Eleventh Circuit *dicta* have found a "cognizable injury despite no allegations that the data may have been published or sold." *See Clayton v. PruittHealth, Inc.*, 2025 WL 1643485, at *2 n.3 (N.D. Ga. June 9, 2025) (citing *Tracy,* 667 F. Supp. 3d 1276*; Teague,* 2025 WL 1527738; *Bracy v. Americold Logistics LLC*, 2025 WL 552676, at *4 (N.D. Ga. Feb. 19, 2025); and *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1218 (11th Cir. 2023)). Applying the Georgia Supreme Court case of *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555, 563, (2019), the court in *Clayton* found that plaintiffs had plausibly alleged injury even in the face of arguments where plaintiffs "fail[ed] to allege that (1) Clayton's personal data 'was actually sold or published on the dark web' or (2) Clayton became the 'victim of identity theft or fraud' due to the data breach." *Clayton*, 2025 WL 1643485, at *2. The *Clayton* court found allegations of injury sufficient where hackers stole and "made copies of files with sensitive data such as full names, addresses, birth dates, social security numbers, and banking information." *Id.*, at *3. The court further found there was at least a plausible inference of exposure of the data on the dark web, and noted that under *Collins* plaintiffs need only "raise[] more than a mere specter of harm and that it was not too far a leap to infer that the plaintiffs likely will suffer identity theft" due to the

"particularly significant …. fact that the data breach occurred as a result of criminal hackers." *Clayton*, 2025 WL 1643485, at *2 (internal quotations and citations omitted).

Plaintiff easily meets the *Collins* standard here. Here, Defendant does not dispute that Plaintiff's and Class Members' sensitive information has been accessed by cybercriminals. *See, e.g.*, Compl. at ¶¶ 5-7, 12, 3. Bitcoin Depot has not been forthcoming regarding the details of the Data Breach but given the value of stolen PII and the *modus operandi* of cybercriminals that commit cyberattacks of this type, there is a plausible inference of exposure of Plaintiff's and Class Members' PII. Compl. at ¶ 37. Plaintiff also alleges that stolen data may be held for up to a year or more before being used to commit identity theft, that criminals often trade valuable PII on the "cyber black- market" for years, and that there is a strong probability that entire batches of stolen sensitive information have been dumped on the black market and are yet to be dumped. Compl. at ¶¶ 90-92. Given these substantial and imminent risks of harm, Plaintiff's allegations of harm go beyond mere speculation and conjecture.

Defendant's cited authority is off-point and unpersuasive. Defendant relies upon *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021), and *Green-Cooper v. Brinker Int'l,* 73 F.4th 883 (11th Cir. 2023), but these cases are distinguishable because they involved credit card information, not the immutable

type of PII accessed here. The *Tsao* plaintiff had not alleged that any sensitive PII such as birth dates or driver's license numbers were compromised in the data breach. *See Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021). In that case hackers allegedly only stole credit and debit card information, which "generally cannot be used alone to open unauthorized new accounts" and therefore it was "unlikely that the information allegedly stolen […], standing alone, raised a substantial risk of identity theft." *Id.* Similarly, *Brinker* involved credit card data that was accessed by threat actors.

Bitcoin Depot next argues that because Plaintiff does not allege that his Social Security number was impacted in the Data Breach, Plaintiff has not alleged a risk of imminent harm. Def.'s Mem. at 8-11. Defendant is wrong. Courts across the country have found that driver's licenses – especially combined with other PII and confidential financial information such as the one at issue here – are also the type of highly valuable and sensitive data that, similarly to Social Security numbers, are used by criminals to commit a wide variety of identity and financial fraud. *See Baker v. Parkmobile, LLC,* No. 1:21-cv-2182-SCJ, 2022 WL 3704003, at *2 (N.D. Ga. Aug. 19, 2022) (denying motion to dismiss where plaintiffs alleged information accessed included license plate numbers, email addresses, phone numbers, dates of birth, hashed passwords and mailing addresses); *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 466 (S.D.N.Y. 2022) (finding Article III standing because driver's

license numbers can be used to commit various financial crimes, such as opening fraudulent accounts, taking out loans, or filing false tax refund claims); *see also Sambou v. State*, 358 Ga. App. 645, 648, 854 S.E.2d 392, 397 (2021) (upholding first-degree forgery conviction where defendant was previously convicted of identity fraud for knowingly using another person's driver's license); *United States v. Morgan*, No. 2:06-CR-0164, 2010 WL 1714705, at *1 (E.D. Pa. Apr. 27, 2010) (defendant used another person's driver's license to create false identification documents as part of an identity fraud scheme).

This case is very different from *Tsao* and more analogous to *Parkmobile, supra*. Plaintiff alleges that as a result of Defendant's failure to properly safeguard and protect its systems, cybercriminals accessed, acquired, and stole Plaintiff's and Class Members' highly sensitive PII including names, phone numbers, driver's license numbers, addresses, dates of birth, and email addresses, the very data accessed in *ParkMobile*. Compl. ¶¶ 5, 7, 31. Given the nature of the information compromised in the Data Breach that is now in the hands of cybercriminals, Plaintiff has adequately alleged that he faces a "material" and "substantial" risk of identity theft that satisfies the concreteness and actual-or-imminent elements of Article III standing. *See In re Equifax*, 999 F.3d at 1262.

Indeed, in *In re Equifax* the Eleventh Circuit listed driver's licenses *alongside* Social Security numbers as the type of information that "identity thieves can create

fake identities, fraudulently obtain loans and tax refunds, and destroy a consumer's credit-worthiness." *In re Equifax*, 999 F.3d at 1262 (holding "we have no hesitation in holding that Plaintiffs adequately alleged that they face a "material" and "substantial" risk of identity theft that satisfies the concreteness and actual-or-imminent elements") (citations omitted).

Moreover, the theft of Plaintiff's PII is especially egregious here because it happened alongside the disclosure of his status as a cryptocurrency owner, putting him at risk not only of identity fraud but also financial harm including cryptocurrency scams and even crimes of violence. Compl. ¶¶ 7, 39; *see also Baton v. Ledger*, 740 F.Supp.3d 847, 875 (N.D. Cal. July 16, 2024) (explaining it would be highly offensive to a reasonable person to have one's PII in conjunction with one's confidential financial information (as indicated by plaintiff's ownership of the crypto wallet and thus his ownership in crypto wealth) disclosed to the public at large).

Additionally, courts in this district recognize that allegations of emotional distress caused by plaintiff's knowledge of the substantial risk of identity theft satisfy the standing inquiry. *See Briggs v. N. Highland Co.*, No. 1:22-CV-03640-SCJ, 2024 WL 519722, at *6 (N.D. Ga. Feb. 9, 2024) (explaining that "if the plaintiff's knowledge of the substantial risk of identity theft causes him to presently experience emotional distress or spend money on mitigation measures like credit

monitoring services, the plaintiff has alleged a concrete injury.") (quoting *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 156 (3d Cir. 2022). Plaintiff alleges he has suffered anxiety and emotional distress as a direct result of his PII being accessed and in the hands of cybercriminals and therefore, he has alleged a concrete injury. *See* Compl. ¶¶ 119-120, 128.

Finally, where a plaintiff plausibly pleads a substantial risk of future harm, courts also consider the steps that plaintiff alleges to have taken to mitigate the risk of identity theft as concrete harm in themselves. *See In re Equifax Inc.*, 999 F.3d at 1263 (holding that "any assertion of wasted time and effort necessarily rises or falls along with this Court's determination of whether the risk posed ... is itself a concrete harm" (quotation omitted)); *Walters v. Fast AC, LLC*, 60 F.4th 642, 648 (11th Cir. 2023) (explaining that "concrete injuries include "not only straightforward economic injuries, like lost money, but also more nebulous ones, like wasted time, missed credit opportunities, and emotional distress") (cleaned up) (quoting *Tsao*, 986 F. 3d at 1338); *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) ("[T]here is no question that wasted time is a concrete harm ....")."

Here, Plaintiff alleges that he has already spent significant time responding to and mitigating harms caused by the Data Breach and suffered actual injury from having his PII exposed in the Data Breach. Compl. ¶¶ 125-29. Given the relevant caselaw, Plaintiff's emotional distress and mitigation efforts are also injuries-in-fact

for purposes of Article III.

**B.      Plaintiff Adequately Alleges a Claim for Negligence**

Bitcoin Depot seeks to dismiss Plaintiff's negligence claim for two reasons, claiming: (1) it had no duty to protect the information it collected and stored because the Data Breach was not reasonably foreseeable, and (2) Plaintiff fails to allege causation and damages. Def.'s Mem. at 12-16. The Court should reject these arguments.

### 1. Bitcoin Depot Had a Duty to Implement Reasonable Data Security Due to the Foreseeable Risk of a Data Breach

Bitcoin Depot first contends it owed no duty to Plaintiff to protect his data because Plaintiff has not plausibly alleged the risk of a data breach was reasonably foreseeable by the Defendant. Def.'s Mem. at 19. Defendant's argument rests on a willful mischaracterization of Plaintiff's allegations and Georgia law.

First, in *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213 (11th Cir. 2023), the court considered allegations regarding defendant's alleged size and sophistication only as one of the several factors in deciding whether the data breach was foreseeable. The Eleventh Circuit emphasized that defendant's failure to take adequate security measures despite industry warnings and advice on how to prevent and detect ransomware attacks – while maintaining an extensive database of prior employees' PII – was a foreseeable cause of a cyberattack. *Id.* at 1220.

Importantly, the court in *Ramirez* highlighted the difficulties faced by

plaintiffs in pleading foreseeability in data breach cases:

> A plaintiff may know only what the company has disclosed in its notice of a data breach. Even if some plaintiffs can find more information about a specific data breach, there are good reasons for a company to keep the details of its security procedures and vulnerabilities private from the public and other cybercriminal groups. We cannot expect a plaintiff in [plaintiff]'s position to plead with exacting detail every aspect of [defendant]'s security history and procedures that might make a data breach foreseeable, particularly where the question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts.

*Id.* at 1221 (cleaned up). Such difficulties are especially evident here, since Defendant not disclosed specific information regarding the Data Breach, including when the Data Breach began, how long it lasted, the identity of cyber criminals who perpetuated the breach and how they accessed Defendant's networks, whether Defendant received a ransom demand, the security measures that Defendant implemented or any comprehensive details about ongoing monitoring or protection for affected individuals. Compl. ¶ 33.

Nevertheless, the Complaint is replete with allegations about the foreseeability of the risk to Defendant, including the factors considered in *Ramirez* such as Bitcoin Depot's size, Defendant's collection of troves of sensitive data, as well as industry warnings about ransomware attacks and applicable FTC guidelines. Plaintiff alleged that Defendant is one of the largest cryptocurrency ATM networks worldwide and a leading Bitcoin ATM operator in the United States, operating over 8,800 Bitcoin ATMs and over 7,700+ BDCheckout™ locations across the United

States and Canada; as a condition of doing business, Defendant required individuals to entrust it with highly sensitive personal records and data; Defendant was aware that its users' personal information was valuable to criminals as it promised to restrict access to this information and ensure its security; and the existence of "other highly publicized data breaches at numerous companies in the financial services industry including cryptocurrency services put Defendant on notice that the personal and sensitive data it stores might be targeted by cybercriminals." Compl. ¶¶ 2, 21, 23, 27, 42. Furthermore, Plaintiff alleged the numerous FTC's warnings to businesses to take data security seriously, and that the FTC had taken action against numerous businesses whose inadequate security measures compromised consumer information. *Id.* ¶¶ 62-63. All of this easily meets the pleading burden under Federal Rule 8(a) for pleading a duty under Georgia law.[2]

Defendant's attempt to distinguish the present case from *Purvis v. Aveanna Healthcare*, 563 F. Supp. 3d 1360 (N.D. Ga. 2021) also fails. The court in *Purvis*

---

[2] Defendant's citation to *Dep't of Labor v. McConnell*, 305 Ga. 812 (2019) should be disregarded since that case concerned the inadvertent disclosure of information to non-criminals and involved the narrow issue of whether a Georgia state agency owed a duty to safeguard personal information under common law or Georgia statutes. *See also Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555, 563 (2019) (allowing a negligence claim to proceed against a healthcare provider in a data breach case); *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441, at *5 (N.D. Ga. Mar. 5, 2018) (finding that allegations that a company knew of a foreseeable risk to its data security systems are sufficient to establish the existence of a plausible legal duty and survive a motion to dismiss).

found that a data breach was reasonably foreseeable where threat of data breaches to healthcare providers was widely and publicly known, and plaintiffs alleged the defendant "was aware of the risk of such a [data] breach and failed to take the necessary precautions to protect [p]laintiffs' information"—the *same* allegations Plaintiff makes here. *Id.* at 1365; *see also* Compl. ¶¶ 42, 58-63 (alleging that Defendant should have been on notice not only because of the highly publicized data breaches in the financial industry, but also because of the numerous FTC's warnings to businesses to take data security seriously, as well as the FTC enforcement actions against businesses for failing to adequately and reasonably protect consumer data).

As in *Purvis*, here Bitcoin Depot had reason to know that it could be the target of precisely the kind of criminal data breach it ultimately experienced and that such a breach would foreseeably expose Plaintiff's personal information. In fact, Defendant's own Privacy Policy acknowledged that criminal hackers may try to gain access to Bitcoin Depot's users' personal information. *See* Compl. ¶ 27. Defendant also represented that it encrypts users' sensitive information "with advanced TLS (Transport Layer Security)," *see id.*, recognizing the need for heightened data security. Therefore, Bitcoin Depot owed Plaintiff a duty to anticipate the harm he experienced and exercise reasonable care to guard against it. *See Purvis*, 563 F. Supp. 3d at 1368; *see also Equifax*, 362 F. Supp. 3d at 1295; *In re Arby's*, 2018 WL 2128441, at *5 (holding that allegations that a company knew of a foreseeable risk

to its data security systems, including other highly publicized data breaches that had occurred in recent years, are sufficient to establish the existence of a plausible legal duty and survive a motion to dismiss); *In re The Home Depot,* 2016 WL 2897520, at *4 ("To hold that no such duty existed would allow retailers to use outdated security measures and turn a blind eye to the ever-increasing risk of cyber attacks, leaving consumers with no recourse to recover damages even though the retailer was in a superior position to safeguard the public from such a risk").

Plaintiff's allegations sufficiently state that Bitcoin Depot was on notice of the need to reasonably protect its data security, and it failed to do so. Hackers successfully breached Bitcoin Depot's systems and collected and stole data on over twenty-six thousand users. Subsequently, Bitcoin Depot admitted that it needed to revamp its data security. *See* Bitcoin Depot's Notice of the Data Breach ("we want to assure you that we've already taken steps to prevent a reoccurrence by enhancing security measures and security monitoring and increasing company awareness of data security protection").[3] Plaintiff has sufficiently alleged the foreseeable risk of a a breach to Bitcoin Depot's systems, Bitcoin Depot's duty to Plaintiff and Class Members to protect their PII and to reasonably implement data security measures, and its breach of that duty.

### 2. Plaintiff Alleges Causation and Cognizable, Compensable Damages

---

[3] *See* Def. Mot., Declaration of Ron Moore, Ex. A.

Defendant's argument that Plaintiff fails to plausibly allege causation or damages ignores the allegations in the Complaint. Def.'s Mem. at 15-16. Plaintiff specifically alleges that stolen data included not only highly sensitive PII but also sensitive financial information including the victims' status as cryptocurrency owners. Compl. ¶ 7, 13-14.[4]

Plaintiff further alleges that, upon information and belief, Plaintiff's and Class Members' PII was published on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyberattacks of this type; and that Plaintiff and Class Members, are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future to commit a variety of financial and other types of crimes including cryptocurrency scams and possible crimes of violence against Class Members. Compl. ¶¶ 37, 39, 49, 51, 205. Further, the Complaint alleges that Plaintiff and Class Members have been forced to expend significant and valuable time dealing with the effects of the Data Breach, including time they otherwise would have spent on other activities, including but not limited to work and/or recreation. *Id.* ¶¶ 109, 125-126.

---

[4]     *Everhart v. Colonial Pipeline Co.*, 2022 WL 3699967, at *1 (N.D. Ga. July 22, 2022), cited by Defendant is distinguishable because of the limited data stolen and no allegations of misuse. Here, Defendant admits that Plaintiff's PII was accessed and "obtained," which is the misuse that was missing in *Everhart*.

Where plaintiffs allege they "remain subject to a pervasive, substantial and imminent risk of identity theft and fraud" due to the "highly-sensitive nature of the information stolen," and that they spent time, money, or effort dealing with the breach, the Eleventh Circuit has no hesitation in finding that plaintiffs adequately allege that they face a "material" and "substantial" risk of identity theft that satisfies the concreteness and actual-or-imminent elements. *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d at 1262. As Eleventh Circuit has recognized, the injuries that Plaintiff has alleged are sufficient to support a negligence claim.[5]

### C. Plaintiff States a Viable Implied Contract Claim

The existence of a contract is a question of fact evaluating all facts and circumstances. *Green v. City of Hamilton, Hous. Auth.*, 937 F.2d 1561, 1566 (11th Cir. 1991). Under Georgia law, an implied-in-fact contract is one not created or evidenced by distinct and explicit language, but inferred by the law as a matter of reason and justice. *See Classic Restorations, Inc. v. Bean*, 155 Ga. App. 694, 699 (1980) (citations omitted). Such contracts arise from the nonverbal conduct (a "continued course of dealing") of the parties. *See J.M. Clayton Co. v. Martin,* 177 Ga. App. 228, 231 (1985).

---

[5] Defendant's argument that Plaintiff's negligence *per se* claim fails rests only on the same flawed assertion it raises against the negligence claim - that Plaintiff plead no allegations establishing causation and injury. Given the well-pled allegations of causation and harm in the Complaint, the Court should deny Bitcoin Depot's request to dismiss the negligence *per se* claim as well.

Defendant essentially argues that the provision of sensitive personal information to a financial institution creates no contractual obligations to protect such data even where the recipient has a privacy policy promising otherwise. *See* Def.'s Mem. at 18. Georgia law and persuasive federal authority say otherwise.

"[D]ata security is at the core of the modern commercial transaction, as understood by both the consumers and retailers" and the promise and expectation that a company would adequately safeguard customer data is implicit in the act of Bitcoin Depot's inviting its customers to sign up for an account, entrust Defendant with their money and in the process provide sensitive personal data. *In re Arby's,* 2018 WL 2128441, at *16; *see also Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 780 (S.D. Ohio 2024) (recognizing a claim for breach of implied contract where bank customers disclosed their PII to the bank); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 414 (E.D. Va. 2020) (holding that "Capital One's act of taking possession of Plaintiffs' sensitive PII created an implied contractual obligation to provide adequate and reasonable data security").[6]

Georgia courts have found that a plaintiff sufficiently alleges an implied

---

[6] Contrary to Defendant's self-serving assertions, the Complaint contains numerous allegations that suggest a "meeting of the minds" as to an agreement by Bitcoin Depot to safeguard Plaintiff's personal information against theft by cybercriminals. *See* Compl. ¶¶ 23-29, 192-200. And although Bitcoin Depot's Privacy Policy disclaims perfect security (in that not all risks can be eliminated), the clear implication of this exclusion is that Defendant is promising reasonable data security.

contract claim by pointing to defendant's privacy policy where it includes a promise to reasonably protect private information. *Purvis,* 563 F. Supp. 3d at 1381-82 (the policy indicated defendant's intent to enter into an implied contract to safeguard plaintiffs' private information). Notably, just as here, plaintiffs in *Purvis* did not allege that they read defendant's privacy policy but only that it was made available to patients upon request and posted on defendant's website.[7] *Id.*; Compl. ¶ 27.

Plaintiff and Class Members provided their PII and paid money to Defendant as a condition of receiving financial services, Defendant implicitly agreed to safeguard that information, and Plaintiff suffered harm when Defendant failed to do so. Compl. ¶¶ 193-205. These allegations easily state a claim for breach of implied contract.

---

[7] To the extent Defendant relies on *Bracy* and *In re TRC Staffing Servs.*, this reliance is misplaced as those cases dealt with provision of personal information in the context of the employee-employer relationship. *See Bracy v. Americold Logistics LLC*, 2025 WL 552676 (N.D. Ga. Feb. 19, 2025); *In re TRC Staffing Servs.*, 2025 WL 1842093 (N.D. Ga. June 18, 2025). *In re Equifax* is distinguishable as well, as in that case defendant's terms of use contained a merger clause which precluded the assertion of an implied contract claim, and plaintiffs did not even allege that they relied upon or were aware of the representations and assurances made in the privacy policy when choosing to use the defendant's services. *See In re Equifax, Inc., Consumer Data Sec. Breach Litig.*, 362 F. Supp. 3d at 1332. Regardless, the issue of which members of the class actually read and relied on the policy is more proper at the class certification stage. *See In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 325 (E.D.N.Y. 2005) (on a motion to dismiss, the court considered an allegation of reliance to encompass an allegation that some putative members of the class read or viewed the privacy policy).

**D.      Plaintiff States a Viable Claim for Unjust Enrichment**

Defendant argues that Plaintiff "did not confer any benefit on Bitcoin Depot" – while quoting the very paragraph stating that Plaintiff and Class Members "conferred a monetary benefit on Defendant *by paying money for financial services* that relied on Defendant to render certain services, a portion of which was intended to have been used by Defendant for data security measures." Def.'s Mem. at 20 (emphasis added); Compl. ¶ 209. Remarkably, Bitcoin Depot then proceeds to ignore this allegation, instead arguing that Defendant derived no benefit from Plaintiff's personal information or from saving on cybersecurity measures. Def.'s Mem. at 20-21.

To state a claim for unjust enrichment, Plaintiff must allege that "(1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust." *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012). Viewed in the light most favorable to Plaintiff, Plaintiff has clearly carried his burden.

Plaintiff alleges that a portion of the payments made by Plaintiff and the Class Members was to be used to provide a reasonable level of data security, and that "[i]f Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to give their money—or disclosed their data—to Defendant." Compl. ¶¶ 209, 213; *compare with Bracy,* 2025 WL 552676, at *7-8 (plaintiffs did

not plead any monetary benefit was conferred on defendant). Plaintiff sufficiently alleges that Defendant was unjustly enriched.[8] *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012) (on a motion to dismiss, upholding a claim for unjust enrichment where plaintiffs alleged they conferred a monetary benefit on defendant in the form of premiums, which defendant used for data management and security).

### E.      Plaintiff Adequately Plead a Breach of Fiduciary Duty

Plaintiff has sufficiently alleged all elements of a breach of fiduciary duty claim. Bitcoin Depot's reliance on *Purvis* and *Clayton* is misplaced to the extent that plaintiffs' breach of fiduciary duty claims in those cases stemmed from an "arms-length employment relationship." *See Purvis*, 563 F. Supp. 3d at 1384; *Clayton v. PruittHealth, Inc.*, 2025 WL 1643485, at *6 (N.D. Ga. June 9, 2025). The court in *Purvis* specifically declined to dismiss claims by patient plaintiffs against the defendant, finding that there was an issue of fact as to whether patient-plaintiffs were "justified in reposing confidence" in defendant with regard to the security of their private information in exchange for services. *Purvis*, 563 F. Supp. 3d at 1383.[9]

---

[8] Again, *Bracy* in inapplicable here as that case concerned only provision of private information (not money) in the context of an employment application. *See Bracy*, 2025 WL 552676, at *7.

[9] *Focus Ent. Int'l* is inapplicable here as that case was limited to a question of whether a bank is liable to its account holder when a bank officer aids and abets an embezzler to escape. *Focus Ent. Int'l, Inc. v. Wachovia Bank N.A.*, No. 1:04-CV-2649-ODE, 2005 WL 8155037, at *4 (N.D. Ga. Nov. 18, 2005)

Regardless, the existence of a confidential or fiduciary relationship is a question for the jury. *Bedsole v. Action Outdoor Advert. JV, LLC*, 325 Ga. App. 194, 201, 750 S.E.2d 445, 452 (2013). "Such relationship may be created by law, contract, or the facts of a particular case. Moreover, because a confidential relationship may be found whenever one party is justified in reposing confidence in another, the existence of this relationship is generally a factual matter for the jury to resolve." *Id.* (quoting *Levine v. Suntrust Robinson Humphrey*, 321 Ga.App. 268, 280(7), 740 S.E.2d 672 (2013).

F.    **Plaintiff States a Claim Under the Georgia UDTPA**

Plaintiff properly states a claim for injunctive relief under the Georgia Uniform Deceptive Trade Practices Act. Defendant's sole argument is that, in Defendant's view, Plaintiff faces no ongoing risk of harm. Def's Mem. at 23-24. This argument fails.

Defendant's reliance on *Bracy* is misplaced. In contrast to *Bracy*, Plaintiff here made specific allegations that Defendant's data systems have not been adequately improved by all available measures. Compl. ¶¶ 236-38; *see Bracy*, 2025 WL 552676, at *9. This is sufficient to survive a motion to dismiss. *See In re Arby's*, 2018 WL 2128441, at *15 (denying a motion to dismiss plaintiff's claim for declaratory relief when the plaintiffs "pleaded that the defendant's security measures continue to be

inadequate and that they will suffer substantial harm" without relief); *Home Depot*, 2016 WL 2897520, at *5 (same).

### G. Plaintiff States a Claim for Relief Under O.C.G.A. § 13-6-11

Defendant's argument for dismissal of Plaintiff's claim for recovery of expenses of litigation and attorneys' fees pursuant to O.C.G.A. § 13-6-11 is premature, as this claim is to be submitted to the jury. Compl. ¶ 255. Regardless, the Complaint plausibly alleges that Bitcoin Depot acted in bad faith through its failure to implement security measures while knowing (or while it reasonably should have known) about the importance of safeguarding Plaintiff's PII. *See Teague*, 2025 WL 1527738, at *6 (finding such allegations are sufficient to plead bad faith on a motion to dismiss); Compl. ¶¶ 247, 250-253. Thus, the claim should proceed at this stage.

## IV. IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO AMEND

Since filing his Complaint Plaintiff has discovered instances of financial fraud on his accounts as well as presence of his personal and sensitive information on the dark web. Should the Court find that Plaintiff's allegations do not establish concrete harm for purposes of Article III standing, or state a claim for relief, Plaintiff respectfully requests leave to amend. *See U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 972 F. Supp. 2d 1317, 1328 (N.D. Ga. 2013) (court should freely give leave to amend a pleading under Fed. R. Civ. P. 15(a) when justice so requires).

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Complaint should be denied in its entirety. Should the Court find dismissal of any portion of Plaintiff's claims is warranted, Plaintiff respectfully requests leave to amend the complaint to address any deficiencies identified by the Court.

Dated: December 15, 2025                Respectfully submitted,

*/s/MaryBeth Gibson*
MaryBeth Gibson
Georgia Bar No. 725843
**GIBSON CONSUMER LAW
GROUP, LLC**
4279 Roswell Rd., Suite 208
Atlanta, Georgia 30342
Tel: (678) 642-2503
marybeth@jgibsonconsumerlawgroup.com

David S. Almeida
Elena A. Belov
**ALMEIDA LAW GROUP LLC**
Firm ID 100530
849 W. Webster Avenue
Chicago, Illinois 60614
Tel: (708) 529-5418
david@almeidalawgroup.com
elena@almeidalawgroup.com

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE & COMPLIANCE

I hereby certify that on December 15, 2025, a copy of the foregoing was filed electronically via the CM/ECF system. Notice of this filing will be sent by email to counsel of record by operation of the court's electronic filing system.

I further certify that the foregoing pleading has been prepared with Times New Roman, 14-point font, in compliance with L.R. 5.1B.

DATED this 15th day of December, 2025.

*/s/ MaryBeth V. Gibson*
MARYBETH V. GIBSON
Georgia Bar No. 725843